UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| FELICIA WASHINGTON ROSS, | ) | CASE NO: 5:22-cv-00871 |
| | ) | |
| Plaintiff, | ) | JUDGE JOHN ADAMS |
| | ) | |
| v. | ) | **MEMORANDUM OF OPINION** |
| | ) | **AND ORDER** |
| PATH MASTER, Inc., et al. | ) | |
| | ) | **(Resolves Docs. 23, 27)** |
| Defendants. | ) | |

Pending before the Court is Defendant's Path Master, Inc., ("Defendant") motion for summary judgment (Doc. 23) and motion to strike certain exhibits submitted with Plaintiff's opposition to its motion for summary judgment (Doc. 27). Upon review, the Court GRANTS Defendant's motion for summary judgment and DISMISSES Plaintiff Felicia Washington Ross' complaint. Defendant's motion to strike is DENIED as moot. Doc. 27.

I.     FACTS

Pro se plaintiff, Felicia Washington Ross, filed this action on April 14, 2022 in the Summit County Court of Common Pleas against her former employer, Path Master, and eight named individuals who appear to be current or former Path Master employees. These eight named individuals were not served and were dismissed pursuant to 28 U.S.C.§ 1915(e). On May 25, 2022, Path Master removed the action to this Court. Plaintiff's pro se complaint asserted various employment related claims based on various federal statutes. Path Master moved to dismiss the claims for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). Doc. 4.

1

On March 13, 2023, the Court dismissed the bulk of Plaintiff's claims, leaving only a claim for alleged violations of the Equal Pay Act. Doc. 9. The facts specific to this claim will be set forth below. Defendant filed the instant motion for summary judgment on October 23, 2023. Doc. 23. This matter is fully briefed for review.

II.  **LEGAL STANDARD**

Rule 56(c) of the Federal Rules of Civil Procedure governs summary judgment motions and provides:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law * * *.

In reviewing summary judgment motions, this Court must view the evidence in a light most favorable to the non-moving party to determine whether a genuine issue of material fact exists. *White v. Turfway Park Racing Ass'n, Inc.,* 909 F.2d 941, 943–944 (6th Cir. 1990).

A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment is appropriate whenever the non-moving party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Moreover, "the trial court no longer has a duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479–1480 (6th Cir. 1989) (citing *Frito–Lay, Inc. v. Willoughby*, 863 F.2d 1029, 1034 (D.C. Cir. 1988)). The non-moving party is under an affirmative duty to point out specific facts in the record as it has been established which create a genuine issue of material fact. *Fulson v. City of Columbus*, 801 F. Supp. 1, 4 (S.D. Ohio 1992). The non-movant

must show more than a scintilla of evidence to overcome summary judgment; it is not enough for the non-moving party to show that there is some metaphysical doubt as to material facts. Id.

### III. LAW AND ANALYSIS

The sole remaining claim before this Court is Plaintiff's allegations that Defendant violated the Equal Pay Act ("EPA"). Doc. 9, p. The EPA prohibits wage discrimination by covered employers "between employees on the basis of sex . . . for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions." 29 U.S.C. § 206(d)(1).

The Court previously noted that Plaintiff's Equal Pay Act allegation was as follows:

> Path Master is in violation of equal employment opportunities, violations of Lilly Ledbetter Fair Pay Act of 2009. A caucasian male received a higher pay than the plaintiff, and violations of equal pay Act 1963. Ben Cefalo, his starting pay was much higher than plaintiffs.
> …
> Plaintiff asked for a higher pay. Path Master said they could not afford to increase the pay, but when temp Ben C, caucasian male came to the company he was hired with much more pay than plaintiff, same title Technician unequal opportunity violation of Lilly Ledbetter Fair Pay Act of 2009.
> …
> Ben C was hired with more pay. Ben C. and the plaintiff did not have that same rights. Plaintiff heard Ben C. tell another employee about how much he was getting paid, which was much more than the plaintiff. (everyone is a tech in that area) Plaintiff was subjected to racial and gender discrimination Lilly Ledbetter Fair Pay Act of 2009, and a violation of equality.
> Doc. 1-2, p. 6, 17, 24.

Doc. 9, p. 8.

It is well established that an EPA claim is reviewed under a three-step burden shifting analysis. *Schleicher v. Preferred Sols*., Inc., 831 F.3d 746, 752-53 (6th Cir. 2016). The analysis is as follows:

First, "[i]n order to establish a prima facie case of wage discrimination under the

3

> EPA, plaintiffs must show that an employer pays different wages to employees of opposite sexes 'for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions.'" *Beck-Wilson*, 441 F.3d at 359 (quoting *Corning Glass Works v. Brennan*, 417 U.S. 188, 195, 94 S. Ct. 2223, 41 L. Ed. 2d 1 (1974)). "Unlike the showing required under Title VII's disparate treatment theory, proof of discriminatory intent is not required to establish a prima facie case under the Equal Pay Act." Id. at 360 (quoting *Peters v. City of Shreveport*, 818 F.2d 1148, 1153 (5th Cir. 1987), abrogated on other grounds by *Price Waterhouse v. Hopkins*, 490 U.S. 228, 109 S. Ct. 1775, 104 L. Ed. 2d 268 (1989)).
>
> Second, "[o]nce the plaintiff establishes a prima facie case, the defendant must 'prove' that the wage differential is justified under one of the four affirmative defenses set forth under § 206(d)(1) of the Equal Pay Act: (1) a seniority system; (2) a merit system; (3) a system which measures earnings by quantity or quality of production; or (4) any other factor other than sex." *Buntin v. Breathitt Cty. Bd. of Educ.*, 134 F.3d 796, 799 (6th Cir. 1998).\*\*\* Importantly, "a defendant bears both the burden of persuasion and production on its affirmative defenses." *Beck-Wilson*, 441 F.3d at 364-65.
>
> Finally, if an EPA defendant proves an affirmative defense, an EPA plaintiff "must come forward with evidence demonstrating the existence of a triable issue of fact" regarding pretext. *Timmer v. Michigan Dep't of Commerce*, 104 F.3d 833, 844 (6th Cir. 1997); accord *Balmer v. HCA, Inc.*, 423 F.3d 606, 613 (6th Cir. 2005), abrogated on other grounds by *Fox v. Vice*, 563 U.S. 826, 131 S. Ct. 2205, 180 L. Ed. 2d 45 (2011). Put another way: an "EPA plaintiff bears the burden of producing evidence of pretext solely where a reasonable jury viewing the defendant's evidence could find only for the defendant." *Buntin*, 134 F.3d at 800 n.7. Accordingly, "[i]n order 'to survive [a] defendant's motion for [summary judgment], the EPA plaintiff need not set forth evidence from which a jury could infer that the employer's proffered reason for the wage differential is pretextual.'" *Beck-Wilson*, 441 F.3d at 365 (quoting Buntin, 134 F.3d at 799). "Rather, as the party who bears the burden of persuasion, the defendant who makes a motion [for summary judgment] must demonstrate that there is no genuine issue as to whether the difference in pay is due to a factor other than sex." Id.

*Schleicher v. Preferred Solutions, Inc.*, 831 F.3d 746, 752-753. As noted above, Plaintiff asserted that a male coworker, Ben Cefalo received higher pay than her for doing the "same title Technician". Doc. 1-2, p. 6, 17, 24; Doc. 22-1, p. 142. In its motion, Defendant contends that Plaintiff cannot establish a prima facie violation of the EPA because her and Cefalo's positions were not substantially similar. Doc. 23-1, p. 19.

4

To establish her prima facie case, Plaintiff "must show that an employer pays different wages to employees of opposite sexes 'for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions.'" *Beck-Wilson*, 441 F.3d at 359. In her complaint, Plaintiff asserted that she and Cefalo had the same title of "Technician." Doc. 1-2, p. 17.

Path Master sets forth the following regarding its business operations:

> Founded by President and owner Randy Van Scoy in 1976, Defendant Path Master has been at the forefront of advancements in technology to improve traffic flow and reduce traffic accidents for nearly 50 years. (Van Scoy Dec.¶ 3). As part of its business operations, Path Master provides fully integrated and customized traffic cabinets and traffic management devices to its customers in Ohio, Pennsylvania, Kentucky, and West Virginia. (Id. at ¶ 4). In total, Path Master employs approximately 35 employees in various roles, including engineers, salespeople, Electronic Panel Assemblers, Cabinet Assemblers, and administrative staff. (Id. at ¶ 3). During the relevant time period to the pending lawsuit, Stacy Shanley ("Shanley") served as Path Master's Vice President, Ben Stidd ("Stidd") served as the company's General Manager, and Bill Dinda ("Dinda") served as Supervisor of the Technician Department. (Dinda Dec. ¶ 2; Shanley Dec. ¶ 2; Van Scoy Dec. ¶ 5). The company is headquartered in Twinsburg, Ohio. (Van Scoy Dec. ¶ 3).

Doc. 23-1, p. 9. Electronic Panel Assemblers and Cabinet Assemblers both work within the Technician Department but have distinct job duties.[1]. Doc. 23-15, p. 3; Doc. 23-2, P. 9. Plaintiff began her employment on September 3, 2019 as an Electronic Panel Assembler. Doc. 23-6. In October of 2020, Cefalo began his employment in with Path Master through a temporary staffing

---

[1] Defendant provides the declaration of Stacia Shanley, former Vice President of Path Master, who swears that
> Though the employment offer letter, job posting, communications, and other company documents sometimes reference the position Ms. Washington was hired into as an Electronic Panel/Cabinet Assembler, these were two separate and distinct jobs within the company with distinct and different job duties. Ms. Washington was hired exclusively to work as an Electronic Panel Assembler for Path Master.

Doc. 23-2, P. 3. See also, Doc. 23-19, p. 1.

5

agency as a Cabinet Assembler. Doc. 23-2, p. 7. On February 22, 2021, Cefalo was offered a full time Cabinet Assembler position, which he accepted. Doc. 23-2, p. 8: Doc. 23-19, P. 4.

Regarding the structure of tasks within the Technician Department, Randal Van Scoy ("Van Scoy"), owner and President of Path Master, swears that

> the Electronic Panel Assembler position Ms. Washington worked in was different and distinct from the separate Cabinet Assembler positions. The Electronic Panel Assembler position primarily entails wiring and assembling electronic control panels and load switches to later be installed in a traffic cabinet by the Cabinet Assembler. The Cabinet Assembler then takes these assembled electronic panels and various other electronic components and installs them in the traffic control cabinets, as dictated by plans specific to the order. Further distinguishing the two positions, the Cabinet Assembler position is much more physically demanding than the Electronic Panel Assembler position. It requires Cabinet Assemblers to retrieve the traffic control cabinets from inventory using a pallet jack and to spend approximately 60% of their time machining the cabinets. This machining component of the job includes cutting holes in the metal traffic cabinets so that wiring can be fished through the holes and exhaust fans and other components can be mounted and fabricated and installing shelving units and other parts inside the traffic cabinets. In contrast, the Electronic Panel Assemblers do not have such significant physical requirements. While Electronic Panel Assemblers and the Cabinet Assemblers both work within the Technician Department, the Electronic Panel Assemblers and the Cabinet Assemblers also work in different spaces to perform their respective job duties."

Doc. 23-15, p. 2-3. Bill Dinda, Plaintiff's direct supervisor, supports this description of division of labor, and noted that Plaintiff "worked exclusively in the Electronic Panel Assembler the entire time she was employed by the company." Doc. 23-19, p. 1.

Plaintiff concedes that there were various duties/tasks performed by different individuals within the Technician Department,: Plaintiff stated that there were "different job duties, but everybody could do the same thing. If you were needed to put panels in a cabinet, then you put panels in a cabinet. If you needed to make subassemblies, you did that." Doc. 22-1, P. 65-66. However, she verified that the vast majority of her time was spend in Electronic Panel Assembly. Doc. 22-1, P. 67. She estimated that she might have put the electronic panels into a cabinet "once

or twice a month maybe." Doc. 22-1, p. 67-68. Notably, a Cabinet Assembler spends approximately 60% of their time machining the metal cabinets prior to assembly. Doc. 23-15, p. 2-3. Plaintiff conceded that she did not even know there were holes in the cabinets until at least a year into her employment, further evidencing the separation of duties within the Technician Department. Doc. 22-1, P. 51. Thus, even if Plaintiff occasionally placed electronic components into cabinets, she has presented no evidence that she participated in any machining tasks required of a Cabinet Assembler.[2] Plaintiff verified that a Cabinet Assembler "would take every piece that's required to be mounted inside of the cabinet and put it all together, get all the final wiring together, make sure all the components are connected appropriately, and then essentially their task is done, they move it down the line so that it can be inspected[.]" Doc. 22-1, P. 90-91. She explained that Cabinet Assemblers "would have to come over to me to get the electronic panel assembly, the papers, the drawings, anything. They cannot come over there and touch anything in my area unless I give it to them." Doc. 22-1, p. 72. Finally, Plaintiff conceded that Cefalo was tasked with cabinet assembly. Doc. 22-1, P. 67, 71; Doc. 23-19, P. 4; Doc. 23-15, P. 4; Doc. 23-2, P. 8.

Upon review, Plaintiff has failed to point out specific facts in the record that create a genuine issue of material fact, i.e., that her and Cefalo's positions were substantially similar to satisfy a prima facie case of a violation of the Equal Pay Act. Accordingly, Defendant's motion for summary judgment is granted.

---

[2] In fact, Plaintiff acknowledges that these tasks are specific to Cabinet Assemblers. She attempts to downplay the difficulty of such tasks, but she does not assert that she ever was tasked with or completed these tasks herself. See Doc. 22-1, P. 90).

7

## IV. CONCLUSION

For the reasons set forth herein, the Defendant's motion for summary judgment is GRANTED. Doc. 23. Plaintiff's complaint is DISMISSED. Defendant's motion to strike (Doc. 27) is DENIED as moot. The Court has considered the entirety of the evidence provided by Plaintiff and it does not alter the analysis set forth above.

IT IS SO ORDERED.

DATE: January 11, 2024          /s/ John R. Adams
Judge John R. Adams
UNITED STATES DISTRICT COURT

9